UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NEWS AMERICA MARKETING IN-STORE SERVICES, LLC,** | Civ. No. 12-1976 (WJM) |
| **Plaintiff,** | |
| v. | **OPINION** |
| **FLOORGRAPHICS, INC.,** | |
| **Defendant.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on Defendant Floorgraphics, Inc.'s ("FGI's") motion to dismiss this declaratory judgment action under Federal Rule of Civil Procedure 12(b)(6). Plaintiff News America Marketing In-Store Services, LLC ("NAM") opposes the motion. For the reasons set forth below, FGI's motion is **DENIED**.

   I.   FACTUAL AND PROCEDURAL BACKGROUND

As an initial matter, the Court notes that NAM's present action against FGI arises out of previous litigation between the parties, and that an understanding of those two related lawsuits bears on the present motion to dismiss.

The Parties' 2004 Lawsuit

On July 19, 2004, FGI commenced suit against NAM in this district at *Floorgraphics, Inc. v. New America Marketing In-Store Services*, 3:04-cv-3500 (AET) (the "2004 Lawsuit"). At that time, FGI and NAM were business rivals who each provided in-store advertising, promotion and sales merchandising services for sellers of

1

consumer product goods. (Compl. ¶ 13.) In the 2004 Lawsuit, FGI accused NAM of unfair business practices, including allegations that NAM obtained unauthorized access to a password-protected website maintained by FGI. (*Id*. at ¶ 14.) The 2004 Lawsuit eventually went to trial before District Judge Anne. E. Thompson. During trial of the 2004 Lawsuit, Gary Henderson, a former NAM employee, gave unequivocal testimony – as he did during his pre-trial deposition – stating that he did not access FGI's password-protected website or direct anybody else to do so. (*Id*. at ¶ 18.) Thereafter, and prior to completion of the trial, FGI and NAM settled the 2004 Lawsuit on March 9, 2009 (the 2004 Settlement").[1]

As a result of the 2004 Settlement, NAM paid FGI and four of its corporate officers an aggregate sum of $29,500,000 for certain FGI assets. (*Id*. at ¶ 25.) The parties also executed a six-page Mutual Release dated March 10, 2009, in which FGI agreed to:

> release[] and forever discharge[] News America from all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, whether based in law or equity, on federal, state, local, foreign, statutory or common law, . . (including, but not limited to, any and all claims arising out of or relating to any acts, omissions, or statements by News America), whether known or unknown, concealed or not concealed, . . . that were asserted or that could have been asserted . . . at any time, in any forum. . . .

(*See* Mutual Release 2, 2009 Lawsuit, ECF No. 23-4.)

The 2009 Lawsuit

Shortly after consummating the 2004 Settlement, NAM came to believe that a substantial part of the assets which it paid FGI for pursuant to the 2004 Settlement were

---

[1] Judge Thompson dismissed the 2004 Lawsuit with prejudice on March 10, 2009.

actually invalid, unassignable, or non-existent.  As a result, on December 1, 2009, NAM commenced a new lawsuit against FGI and its corporate officers for breach of contract and fraud at *News America Marketing In-Store Services v. Andijar*, 2:09-cv-6070 (WJM) (the "2009 Lawsuit") (Compl. ¶ 27.)  The 2009 Lawsuit remains pending before this Court.

        FGI's Subsequent Discovery of New Evidence

        FGI asserts that after it signed the Mutual Release on March 10, 2009, it discovered new evidence demonstrating that Gary Henderson committed perjury during his pre-trial deposition and at trial of the 2004 Lawsuit when he denied that he knew who was responsible for hacking into FGI's computer system.  FGI asserts that as a result of Henderson's perjury, FGI was fraudulently induced into settling the 2004 Lawsuit.  In light of that newly discovered evidence, FGI initially moved before Judge Thompson to reopen the 2004 Lawsuit pursuant to Federal Rule of Civil Procedure 60(b).  On May 17, 2010, Judge Thompson denied that motion.  The Third Circuit affirmed that decision via a mandate issued on May 13, 2011, at U.S.C.A. No. 10-2721.

        Thereafter, on January 6, 2012, FGI moved before Magistrate Judge Mark Falk to amend its answer in the 2009 Lawsuit to include counterclaims against NAM for fraud, fraudulent inducement, and civil conspiracy, again based on newly discovered evidence of Mr. Henderson's alleged perjury (FGI's "Fraud Claims").  (Compl. ¶ 39; *see also* 2009 Lawsuit Hr'g Trans. 30, April 2, 2012, ECF No. 76.)  NAM opposed FGI's motion and sought to instead have FGI's Fraud Claims dismissed with prejudice, based on its assertion that the 2004 Mutual Release barred FGI from bringing those Fraud Claims.

(Compl. ¶ 40.) The parties provided extensive briefing on that issue. (*See* 2009 Lawsuit, ECF Nos. 60, 64, 69.)

On April 2, 2012, Judge Falk held a hearing on FGI's motion to amend. At that hearing, Judge Falk noted NAM's zealous advocacy for dismissal of FGI's Fraud Claims with prejudice based on futility grounds, in light of the Mutual Release. (2009 Lawsuit Hr'g Trans. 35, April 2, 2012, ECF No. 76.) Judge Falk also noted his concern that making a dispositive ruling on that issue would encroach on the role of the district judge. (*Id.*) Ultimately, Judge Falk denied FGI's motion to amend its answer to assert Fraud Claims without prejudice.[2] (*Id*. at 35-37.)

On that same day, NAM commenced the present declaratory judgment action at *News America Marketing In-Store Services, LLC v. Floorgraphics, Inc.*, 2:12-cv-1976 (WJM). In the current pleading, NAM seeks – among other things – a judicial declaration that the terms of the Mutual Release bar FGI from asserting its Fraud Claims. In response, FGI filed the present motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which NAM opposes.

## II.   DISCUSSION

### A.  Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under

---

[2] A formal order to that effect was signed by Judge Falk on April 16, 2012. (*See* 2009 Lawsuit, ECF No. 78.)

Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). When considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007).

### B. The Declaratory Judgment Act

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), affords this Court with broad "discretion to 'declare the rights and other legal relations of any interested party seeking such declaration,' when there is a 'case of actual controversy.'" *Abraham v. Del. Dep't of Corr.*, 331 Fed.Appx 929, 931 (3d Cir. 2009) (*quoting* 28 U.S.C. § 2201). In other words, this Court has broad powers to act under the DJA as long as there is a legitimate dispute between the parties, *i.e.*, a claim that is ripe for adjudication. *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990). Whether a claim is ripe "is a question of degree which turns on the facts of each case." *Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F. Supp. 219, 237 (D.N.J. 1966). In determining whether a claim is sufficiently ripe for purposes of the DJA, the Court considers the following three factors:[3]

**(1) Adversity of the Interest of the Parties.** To establish adversity of interest between the parties, a DJA plaintiff is required to demonstrate that the probability of the occurrence of a feared future event "is real and substantial, [and] of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Armstrong World Indus.,*

---

[3] *Step-Saver*, 912 F.2d at 647-50

*Inc. v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992).  Thus, although a plaintiff is not required to suffer a completed harm, a potential harm that is contingent on a future event occurring will likely not satisfy the adversity of interest prong of the ripeness test.  *See Step-Saver*, 912 F.2d at 647-48; *Armstrong*, 961 F.2d at 412-413.

**(2) Conclusiveness of the Judgment.**  In analyzing this factor, the Court must "determine whether judicial action at the present time would amount to more than an advisory opinion based upon a hypothetical set of facts."  *Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1468 (3d Cir.1994).  Notably, "predominantly legal questions are generally amenable to a conclusive determination in a preenforcement context."  *Id.*

**(3) Practical Utility of a Judgment.**  Finally, this Court considers "the practical help, or utility, of that judgment."  *Step-Saver*, 912 F.2d at 647.

If all three *Step-Saver* requirements are met, the claim is ripe for purposes of this Court acting under the DJA.  *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995).  *But see Armstrong*, 961 F.2d at 412 (explaining that this list is not "exhaustive of the principles courts have considered in evaluating ripeness challenges.").

### C. Application

In the present pleading, NAM seeks a judicial declaration that under the terms of the broadly worded Mutual Release signed by FGI on March 10, 2009, FGI is now barred from asserting its Fraud Claims against NAM based on the alleged perjury committed by Gary Henderson prior to March 10, 2009.  As a result of their prior litigation history, the parties have already developed an extensive and largely undisputed factual record.  In

light of that factual record, NAM now seeks clarification on the scope of FGI's rights to bring future Fraud Claims against NAM under the terms of the Mutual Release.  Thus, any judicial action at the present time would amount to more than an advisory opinion based upon a hypothetical set of facts.  And because NAM has already moved to assert its Fraud Claims in the 2009 Lawsuit, the probability of the occurrence of that feared future event is not contingent on anything: it already occurred.  Moreover, this issue can be decided as a matter of law, and in fact, has already been extensively briefed in the context of FGI's motion to amend in the 2009 Lawsuit.  In addition, after conferring with counsel, it appears that resolution of this issue may help facilitate settlement of the 2009 Lawsuit.  (*See also*, NAM's Br. in Opp. to Mot. to Dismiss 17-18, ECF No. 23.)  Thus, the Court finds that there is practical utility in resolving this issue.

      In short, based on consideration of all three *Step-Saver* Factors, the Court finds that NAM has sufficiently stated a claim for relief under the DJA.  Accordingly, FGI's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) will be **DENIED**.  *See Lyncott Corp. v. Chemical Waste Management, Inc.*, 690 F.Supp. 1409 (E.D. Pa. 1988) (use of DJA appropriate where plaintiffs sought determination of their rights pursuant to two agreements executed in settlement of certain related state and federal court litigation); *Zinn v. Seruga*, 05-CV-3572 (WGB), 2006 WL 2135811 (D.N.J. July 28, 2006) (DJA action seeking to invalidate trademark sufficiently pled where parties were already involved in litigation over the same issues in state court, a judicial determination on the validity of the mark would clarify defendants' right to bring an infringement claim based on assignment, and a determination that the mark was invalid

would clarify the parties' rights as to the use of the mark, aid the pending litigation, provide practical assistance to the parties to make responsible future decisions, and ultimately clarify the parties' respective rights to use of the mark.)

### III. CONCLUSION

For the reasons stated above, Defendant FGI's Rule 12(b)(6) motion is **DENIED**. An appropriate order follows.

/s/William J. Martini<br>
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 12, 2012.**