## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NEWS AMERICA MARKETING IN-STORE SERVICES, LLC,**<br><br>  **Plaintiff,**<br><br>  v.<br><br>**FLOORGRAPHICS, INC.,**<br><br>  **Defendant.** | Civ. No. 12-1976 (WJM)<br><br>**OPINION** |

### <u>WILLIAM J. MARTINI, U.S.D.J.</u>:

This matter comes before the Court on Plaintiff News America Marketing In-Store

Services, LLC's ("NAM's") motion for summary judgment under Federal Rule of Civil

Procedure 56. Defendant Floorgraphics, Inc. ("FGI") opposes the motion. For the

reasons set forth below, NAM's motion is **GRANTED in part** and **DENIED in part**.

### I.      FACTUAL AND PROCEDURAL BACKGROUND

On December 12, 2012, the Court denied FGI's Rule 12(b)(6) motion to dismiss

this declaratory judgment action. The facts in this action remain unchanged since that

decision. As such, the Court relies on its December 12, 2012 Opinion for an introduction

to the underlying basis for the present motion:

> As an initial matter, the Court notes that NAM's present action against FGI arises
> out of previous litigation between the parties, and that an understanding of those two
> related lawsuits bears on the present motion . . . .
>
> <u>The Parties' 2004 Lawsuit</u>
> On July 19, 2004, FGI commenced suit against NAM in this district at
> *Floorgraphics, Inc. v. New America Marketing In-Store Services*, 3:04-cv-3500 (AET)

(the "2004 Lawsuit").  At that time, FGI and NAM were business rivals who each provided in-store advertising, promotion and sales merchandising services for sellers of consumer product goods.  (Compl. ¶ 13.)  In the 2004 Lawsuit, FGI accused NAM of unfair business practices, including allegations that NAM obtained unauthorized access to a password-protected website maintained by FGI.  (*Id*. at ¶ 14.)  The 2004 Lawsuit eventually went to trial before District Judge Anne. E. Thompson.  During trial of the 2004 Lawsuit, Gary Henderson, a former NAM employee, gave unequivocal testimony – as he did during his pre-trial deposition – stating that he did not access FGI's password-protected website or direct anybody else to do so.  (*Id*. at ¶ 18.)  Thereafter, and prior to completion of the trial, FGI and NAM settled the 2004 Lawsuit on March 9, 2009 (the [2009] Settlement").

As a result of the [2009] Settlement, NAM paid FGI and four of its corporate officers an aggregate sum of $29,500,000 for certain FGI assets.  (*Id*. at ¶ 25.)  The parties also executed a six-page Mutual Release dated March 10, 2009, in which FGI agreed to:

> release[] and forever discharge[] News America from all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, whether based in law or equity, on federal, state, local, foreign, statutory or common law, . . (including, but not limited to, any and all claims arising out of or relating to any acts, omissions, or statements by News America), whether known or unknown, concealed or not concealed, . . . that were asserted or that could have been asserted . . . at any time, in any forum. . . .

(*See* Mutual Release ¶ 2, 2009 Lawsuit, ECF No. 23-4.)

The 2009 Lawsuit
Shortly after consummating the [2009] Settlement, NAM came to believe that a substantial part of the assets which it paid FGI for pursuant to the [2009] Settlement were actually invalid, unassignable, or non-existent.  As a result, on December 1, 2009, NAM commenced a new lawsuit against FGI and its corporate officers for breach of contract and fraud at *News America Marketing In-Store Services v. Andijar*, 2:09-cv-6070 (WJM) (the "2009 Lawsuit") (Compl. ¶ 27.)  The 2009 Lawsuit remains pending before this Court.

FGI's Subsequent Discovery of New Evidence
FGI asserts that after it signed the Mutual Release on March 10, 2009, it discovered new evidence demonstrating that Gary Henderson committed perjury during his pre-trial deposition and at trial of the 2004 Lawsuit when he denied that he knew who was responsible for hacking into FGI's computer system.  FGI asserts that as a result of Henderson's perjury, FGI was fraudulently induced into settling the 2004 Lawsuit.  In light of that newly discovered evidence, FGI initially moved before Judge Thompson to reopen the 2004 Lawsuit pursuant to Federal Rule of Civil Procedure 60(b).  On May 17, 2010, Judge Thompson denied that motion.  The Third Circuit affirmed that decision via a mandate issued on May 13, 2011, at U.S.C.A. No. 10-2721.

Thereafter, on January 6, 2012, FGI moved before Magistrate Judge Mark Falk to amend its answer in the 2009 Lawsuit to include counterclaims against NAM for fraud, fraudulent inducement, and civil conspiracy, again based on newly discovered evidence of Mr. Henderson's alleged perjury (FGI's "Fraud Claims"). (Compl. ¶ 39; *see also* 2009 Lawsuit Hr'g Trans. 30, April 2, 2012, ECF No. 76.) NAM opposed FGI's motion and sought to instead have FGI's Fraud Claims dismissed with prejudice, based on its assertion that the [2009] Mutual Release barred FGI from bringing those Fraud Claims. (Compl. ¶ 40.) The parties provided extensive briefing on that issue. (*See* 2009 Lawsuit, ECF Nos. 60, 64, 69.)

On April 2, 2012, Judge Falk held a hearing on FGI's motion to amend. At that hearing, Judge Falk noted NAM's zealous advocacy for dismissal of FGI's Fraud Claims with prejudice based on futility grounds, in light of the Mutual Release. (2009 Lawsuit Hr'g Trans. 35, April 2, 2012, ECF No. 76.) Judge Falk also noted his concern that making a dispositive ruling on that issue would encroach on the role of the district judge. (*Id.*) Ultimately, Judge Falk denied FGI's motion to amend its answer to assert Fraud Claims without prejudice. (*Id.* at 35-37.)

On that same day, NAM commenced the present declaratory judgment action at *News America Marketing In-Store Services, LLC v. Floorgraphics, Inc.*, 2:12-cv-1976 (WJM).

(Dec. 12, 2012 Op., ECF No. 27) (footnotes omitted.)

In that pleading, NAM seeks judicial declarations that FGI is barred from pursuing its Fraud Claims because the Mutual Release bars those claims, and further seeks judicial declarations NAM did not "procure the [2009 Settlement] or the Mutual Release by fraud" and "that FGI is barred from pursuing an action for civil conspiracy [because] NAM did not so conspire."[1] (Compl. 13.)

As noted earlier, on December 12, 2012, the Court denied FGI's Rule 12(b)(6) motion to dismiss this declaratory judgment action. In denying that motion, the Court recognized that as a result of the parties' prior litigation history, the parties have already engaged in extensive discovery, developed a detailed factual record, and provided

---

[1] Although it is outside of the scope of this Opinion, NAM's pleading also seeks a judicial declaration that "FGI is barred from pursuing an action for civil conspiracy because an entity cannot conspire with its own employees as a matter of law." (Compl. 13.)

extensive briefing on many of the issues which are central to resolution of the present matter.  Accordingly, on that date, the Court further ordered that NAM and FGI submit letter briefs to the Court on the issue of "whether there is any additional facts or briefing not already available to the Court which precludes this Court from determining whether it should grant the declaratory relief sought by [NAM] in the present matter."  (Dec. 12, 2012 Order, ECF No. 28.)

After considering the submissions of the parties made in response to the Court's December 12, 2012 Order (ECF Nos. 36 and 37), the Court ordered that "NAM formally move for summary judgment in this declaratory judgment action."  (Jan. 30, 2013 Order, ECF No. 38.)  In that Order, the Court explicitly indicated that:  "to the extent relevant arguments and material facts have already been presented in previous submissions to the Court, unless those arguments – and the relevant authoritative support – are also included in the parties' submissions made in response to NAM's soon-to-be-filed motion, the Court may not consider them."  (*Id.* at n. 1.)

Subsequently, NAM filed the present summary judgment motion in which it seeks a judicial declaration that based on the terms of the Mutual Release, and in light of the other undisputed facts before this Court, FGI is barred from asserting its Fraud Claims, and further, that NAM is entitled to an award of attorney's fees incurred after March 10, 2009 as a result of FGI's attempts to assert those Fraud Claims, which NAM claims constitutes a breach of the Mutual Release.

The following additional facts bear on the present motion.  First, that in addition to the incredibly broad release language set forth in Paragraph 2 of the Mutual Release,

4

Paragraph 7 of that document states: "After consultation with their own counsel, the Parties [– including FGI –] specifically waive the benefits of Section 1542 of the Civil Code of the State of California (or any similar statute) which provides as follows: 'A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected the settlement with the debtor.'" (Mutual Release ¶ 7.)

<u>Second</u>, that in addition to the Mutual Release, on March 10, 2009, the parties entered into an Asset Purchase Agreement ("APA"), which is the primary document consummating FGI's sale of its purported assets to NAM.

<u>Third</u>, that Pursuant to the Section 7.2(b) of the APA, FGI agreed to indemnify NAM for all "legal fees and expenses"[2] resulting from "any breach of or failure to perform any covenant or agreement made by [FGI] in this Agreement or other document delivered hereunder." The Mutual Release, in turn, is one of the documents delivered under the APA. (*See* APA, Section 3.2(k).)

<u>Fourth</u>, that both the Mutual Release and the APA contain identically worded choice of law provisions stating that each document "shall be governed and construed in accordance with the Laws of the State of New York without regard to the conflicts of Law provisions thereof to the extent they would result in the application of the Laws of another jurisdiction." (APA Section 8.8; Mutual Release ¶ 11.)

## II.    DISCUSSION

### A. Summary Judgment

---

[2]   More precisely, Section 7.2 of APA all "Losses" – expressly defined to include "legal fees and expenses"

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). On a motion for summary judgment, the Court considers all evidence and inferences drawn therefrom in the light most favorable to Plaintiff, the non-moving party. *Andreoli v. Gates*, 482 F.2d 641, 647 (3d Cir. 2007). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex*, 477 U.S. at 322–23.

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). This in turn "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but "must exceed the 'mere scintilla' threshold").

**B. Application**

For purposes of the present summary judgment motion, it is undisputed that FGI's Fraud Claims all stem from acts of perjury allegedly committed by Gary Henderson prior to March 10, 2009.  FGI's position is that had it known about those acts of perjury, it would not have agreed to the terms of the 2009 Settlement, and would have instead agreed to sell its assets for a higher sum.  (FGI's Response in Opp'n to NAM's Mot. for Summ. J. 4, ECF No. 45.)  NAM's position, in turn, is that even if Gary Henderson perjured himself – which NAM disputes  – and even if FGI explicitly relied on those misrepresentations in consummating the 2004 Settlement, FGI is barred from asserting those Fraud Claims under the incredibly broad language in the Mutual Release.

### i.      Choice of Law

As an initial matter, the parties dispute whether the Court should apply New York or New Jersey law in determining whether FGI is barred from asserting its Fraud Claims. For purposes of the present motion, it is sufficient to note that the threshold to void a release appears higher under New York law than it does under New Jersey law.  *Compare Centro Empresarial Cempresa S.A. v. America Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (N.Y. 2011) ("a release may encompass unknown claims, including unknown fraud claims, if the parties so intend and the agreement is 'fairly and knowingly made'") *and S.A. Citrique Belge N.V. v. Northeast Chemicals, Inc.*, Civil Action No. 3:12-cv-5408 (PGS), 2013 WL 3223389, at *3 (D.N.J. June 25, 2013) (refuting defendant's assertion that the comprehensive terms of the release at issue precluded plaintiff from asserting a fraud claim).

NAM's position is that in light of the Mutual Release's choice of law provision, New York law governs, that under New York law, a release "may be only set aside where the asserted fraud is separate from the release," and that here, because Henderson's alleged perjury is not separate from the subject matter of the Mutual Release, FGI is now barred from asserting its Fraud Claims. (Pl.'s Memo. Of Law in Supp. of NAM's Mot. for Summ. J. 17 (citing *Centro Empresarial*, 17 N.Y.3d at 276 (N.Y. 2011).) FGI, in turn, asserts that New Jersey governs the issue of whether the Mutual Release is a bar to FGI's Fraud Claims, and that under New Jersey law, a release procured through fraud does not bar a claim that the release itself was procured by fraud. (FGI's Response in Opp'n to NAM's Mot. for Summ. J. 19.)

For purposes of the present motion, it is sufficient to note that the Court resolved a similar choice of law issue when it was raised by the parties in the 2009 Lawsuit. In that instance, the Court determined that New Jersey law applied to NAM's fraud claims stemming from allegedly false certifications made by one of FGI's corporate officers as to the truth of certain representations and warranties in the APA, in spite of the language in Section 8.8. of APA stating that "this Agreement shall be governed and construed in accordance with the Laws of the State of New York . . . ." *See News Am. Mktg. In-Store Servs., LLC v. Anidjar*, CIV. 09-6070 (WJM), 2010 WL 3040118, at *5 (D.N.J. Aug. 4, 2010) (noting that the APA's governing law provision expressly pertained to '[t]his Agreement' and that where a governing law provision is so delineated, the Third Circuit has viewed it as limited in application to the underlying agreement itself, and not to related fraud or non-contractual claims). As noted earlier, the choice of law language in

8

Section 8.8 of the APA is nearly identical to the governing law provision in the Paragraph 11 of Mutual Release.  Thus, for substantially the same reasons set forth in the Court's August 4, 2010 Opinion in the 2009 Lawsuit, the Court finds that New Jersey law governs the issue of whether the Mutual Release is a bar to FGI's Fraud Claims.

### ii.     Releases Under New Jersey Law

In New Jersey, it is well-established that a release is a contract and thus subject to enforcement under the usual principles of contractual interpretation.  *Cooper v. Borough of Wenonah*, 977 F.Supp. 305, 311 (D.N.J.1997) (citing Restatement (Second) of Contracts § 284).  It is also well-established that the plain language of a settlement agreement is entitled to a presumption of validity.  *Id.* at 311-12.  *See also Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 492 (3d Cir. 2006) (citations omitted).  As such, a general release, not restricted by its terms to particular claims or demands, ordinarily covers all claims and demands due at the time of execution and within the contemplation of the parties.  *Bilotti v. Accurate Forming Corp.*, 39 N.J. 184, 203, 188 A.2d 24 (1963). *See also Van Houten Serv., Inc. v. Shell Oil Co.*, 417 F. Supp. 523, 530 (D.N.J. 1975) *aff'd*, 546 F.2d 421 (3d Cir. 1976).

An exception to this presumption arises, however, where allegations of fraud and misrepresentation are present.  *Van Houten*, 417 F.Supp. at 527.  In such an instance, the contract is voidable and the victim may rescind the release.  *Windsor Card Shops, Inc. v. Hallmark Cards, Inc.*, 957 F.Supp. 562, 568 n. 8 (D.N.J.1997); *see also First Am. Title Ins. Co. v. Lawson*, 177 N.J. 125, 136, 827 A.2d 230 (2003).  That being said, because New Jersey has a strong policy in favor of enforcing the terms of settlement agreements,

9

New Jersey courts require clear and convincing proof of fraud in order to vacate such an agreement. *Deficcio v. Winnebago Indus.*, Civil Action No. 11-872 (MLC), 2011 WL 4594291, at *5 (D.N.J. Sept. 30, 2011) (citing *Nolan ex rel. Nolan v. Lee Ho*, 120 N.J. 465 (N.J.1990)).  In other words, in order for this Court to vacate the Mutual Release, FGI must provide clear and convincing proof of fraud in the inducement of that document, which, in turn, requires that FGI demonstrate clear and convincing proof of: (1) a material misrepresentation of fact; (2) reasonable reliance on that misrepresentation; and (3) resulting damages. *See Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624 (1981).

 *See also Flexi-Van Corp. v. Orzeck*, Civil Action No. 88-5015, 1990 WL 119308, at *5 (D.N.J. Aug. 14, 1990) *aff'd*, 958 F.2d 363 (3d Cir. 1992) ("The specific question before the Court is whether defendants were fraudulently induced to sign the 1987 release agreement based on [defendant's material misrepresentations].  Defendants, to defeat this motion for summary judgment, must put forward sufficient evidence that [plaintiff], knowing the statement to be false, or in reckless disregard as to whether it was false, made a misrepresentation as to a material matter with the intention that [defendant] rely on the statement and that [defendant], in fact, relied on the statement to his detriment.")

 **iii.** **Analysis**

 Presently, NAM moves for a summary judgment determination FGI is now barred from asserting its Fraud Claims against NAM based on the alleged perjury committed by Gary Henderson prior to March 10, 2009.  The Court finds that FGI is.

First, when looking at the plain language of the Mutual Release, in addition to the incredibly broad release language set forth in Paragraph 2, in which FGI agreed to "release[] and forever discharge[] News America from all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, . . .   whether known or unknown, concealed or not concealed," under Paragraph 7, the parties also agreed to waive their right to assert "claims which the [the parties did] not know or suspect to exist in [their] favor at the time of executing the release, which if known by [them] must have materially affected the settlement . . . ."  (Mutual Release ¶¶ 2, 7).  In other words, in spite of the seemingly unequivocal release language set forth in Paragraph 2, FGI and NAM took an additional step of explicitly agreeing that they waived their right to assert claims based on unknown information that would have materially affected the terms of the settlement.

Second, there is no dispute that FGI was aware of Gary Henderson's deposition and trial testimony when it signed the Mutual Release, and as such, Henderson's testimony was clearly within the contemplation of FGI when it signed the Mutual Release in 2009.  In other words, on the undisputed facts before the Court, there is no basis to find that the Mutual Release, which is unrestricted by its terms to particular claims or demands, somehow would not cover FGI's Fraud Claims stemming from Gary Henderson's alleged perjury.  In short, the Court has been presented with a broadly-worded and presumptively-valid release which – through its plain language – encompasses claims that could have been asserted prior to execution of that document,

including those claims which could have been asserted as a result of Henderson's alleged perjury in the course of litigation leading up to consummation of the Mutual Release.

Against that backdrop, and in spite of the fact that FGI conducted extensive discovery in the nearly five years of litigation leading up to the 2009 Settlement, in spite of the Court's explicit directive that NAM file a motion for summary judgment, and in spite of the Court giving FGI the opportunity to present all relevant arguments, material facts, and appropriate authoritative support in response to that motion,  FGI has failed to present the Court with any facts tending to support its claim that Gary Henderson committed perjury during the trial of the 2004 Lawsuit or during his pre-trial deposition, much less, provide the Court with any evidence that but-for Gary Henderson's perjury, FGI would not have signed the Mutual Release.  In other words, even if the Court were to find that FGI is not barred from asserting its Fraud Claims under the terms of the Mutual Release, FGI has failed to present the Court with any basis – much less clear and convincing evidence – to find that NAM was fraudulently induced into signing the Mutual Release as a result of Henderson's testimony.

In short, based on the terms of the broadly-worded Mutual Release and the lack of any material fact suggesting that Gary Henderson committed perjury or that FGI was fraudulently induced into signing the Mutual Release as a result of that perjury, the Court finds that FGI is barred from asserting Fraud Claims against NAM based on Gary Henderson's testimony prior to the consummation of the 2009 Settlement.  *See DaimlerChrysler Fin. Servs. Americas, LLC v. Woodbridge Dodge, Inc.*, CIV.A.06-5225SRC, 2009 WL 2152083, at *6 (D.N.J. July 14, 2009) (dismissing common law

counterclaims – including fraudulent misrepresentation claim –to the extent they were based on acts occurring prior to the date the defendants signed releases for all "known and unknown" claims against plaintiff, and noting that to the extent defendants argued that the releases were otherwise void or voidable due to fraud  or some other material misrepresentation made by plaintiff, defendants failed to present the court with evidence that would support vitiating the releases on those grounds, particularly where defendants were represented by counsel in the negotiations culminating in the execution of the releases); *Van Houten Serv.*, 417 F. Supp. 523 (D.N.J. 1975) (franchisee failed to sustain its summary judgment burden of showing *prima facie* case of fraud or suggestion of fraud in inducement of release, and therefore that release – which explicitly included "all claims which each now has against the other (whether or not known to either)" – barred action).

Based on the foregoing, NAM's motion for a Court declaration that FGI is now barred from asserting its Fraud Claims against NAM based on the alleged perjury committed by Gary Henderson prior to March 10, 2009 will be **GRANTED**.

### iv.    Attorneys' Fees

NAM additionally moves on summary judgment for "an award of [legal fees and expenses] because FGI has breached the covenant not to sue contained in Section 5 of the Mutual Release, causing NAM to incur 'Losses' for which it is entitled to indemnity under the APA."  (Pl.'s Memo. Of Law in Supp. of NAM's Mot. for Summ. J. 29.)

It is undisputed that pursuant to Paragraph 5 of the Mutual Release states that FGI "shall be forever barred and enjoined from asserting, instituting, commencing any

proceeding, prosecuting, or continuing the prosecution of any and all claims of every

nature and description, known and unknown, arising out of or relating to the claims and

allegations that were made or could have been made in the [2004 Lawsuit] or that are

otherwise purported to be released under this Mutual Release . . . ." (Mutual Release ¶

5.) It is further undisputed that pursuant to the Sections 3.2(k) and 7.2(b) of the APA,

FGI agreed to indemnify NAM for all legal fees and expenses resulting from any breach

of any covenant made by FGI in the Mutual Release.

That being said, under the circumstances of this case, where FGI's first attempt to

assert its Fraud Claims was in litigation initiated by NAM, and where it was NAM who

subsequently brought this declaratory judgment action to prevent FGI from asserting

those Fraud Claims at an unspecified future date, the Court is unable to find that the plain

language of the APA and the Mutual Release mandate a finding that NAM is entitled to

"legal fees and expenses" incurred in this litigation after March 10, 2009. Accordingly,

NAM's motion for summary judgment on that issue will be **DENIED**.

## III.   CONCLUSION

For the reasons stated above, Plaintiff NAM's motion for summary judgment is

**GRANTED in part** and **DENIED in part**. An appropriate order follows.


                                        /s/William J. Martini
                                        **WILLIAM J. MARTINI, U.S.D.J.**


**Date: September 10, 2013.**

14